UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PAUL D.S. EDWARDS, | Case No. 2:20-cv-00570-JAD-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| JUAN MARTINEZ, INC., d/b/a CENTURY 21 AMERICANA, f/d/b/a CENTURY 21 MARTINEZ & ASSOCIATES, and REDX, LLC, a/d/b/a/ REAL ESTATE DATA X-CHANGE, INC., and COLE INFORMATION SERVICES, INC., a/d/b/a COLE REALTY RESOURCE, and JUAN MARTINEZ, a/k/a JUAN A. MARTINEZ, JR., a/k/a JUAN ANTONIO MAYEN, and ELIZABETH MARTINEZ, a/k/a ELIZABETH A. MARTINEZ, and SERGIO BRANDON TAMEZ, a/k/a SERGIO TAMEZ, and MARK HARRIS LECK, a/k/a MARK H. LECK, a/k/a MARK H. LEC, a/k/a M. L. ECK, and JIM EGGLESTON, a/k/a JAMES EGGLESTON, and DOES I-X, and ROE CORPORATIONS XI-XX, et al., | |
| Defendants. | |

Before the Court is Defendants Cole Information Services, Inc. and James Eggleston's Motion to Stay Discovery.[1] The Court has considered the Motion, Plaintiff's Opposition,[2] Defendants RedX LLC and Mark Leck's Opposition,[3] and Defendants Cole and Eggleston's Reply in Support of their Motion to Stay Discovery.[4] Defendants Juan Martinez, Inc. d/b/a Century 21 Americana, Juan Martinez, Elizabeth Martinez, and Sergio Brandon Tamez (collectively, the "Century 21 Defendants") did not file a joinder to Cole and Eggleston's Motion to Stay Discovery; nor did they file a separate motion requesting the same relief.

---

[1] ECF No. 18.
[2] ECF No. 41.
[3] ECF No. 39.
[4] ECF No. 42.

1

Also before the Court is Plaintiff's Motion to Compel.[5] Cole and Eggleston filed an Opposition to Plaintiff's Motion in which RedX and Leck joined.[6] The Century 21 Defendants filed a separate Opposition to Plaintiff's Motion to Compel.[7] Plaintiff filed Replies to both Oppositions.[8]

Finally, the Court has considered Plaintiff's Motion for Leave to Conduct Limited Expedited Discovery,[9] Cole and Eggleston's Opposition,[10] RedX and Leck's Opposition,[11] the Century 21 Defendants' Joinders to the Opposition,[12] and Plaintiff's Replies.[13]

## I.   RELEVANT BACKGROUND

This action concerns four unsolicited phone calls Plaintiff claims Defendants authorized and/or placed to his cellular and landline telephones in violation of the Telephone Consumer Protection Act (the "TCPA"), three Nevada Revised Statutes, and his right to privacy.[14] On February 10, 2020, Plaintiff filed his operative Amended Complaint in Nevada state court, and on March 23, 2020, Cole and Eggleston removed this action to federal court.

On March 25, 2020, RedX and Leck filed their Motion to Dismiss Plaintiff's Amended Complaint arguing that the Court lacks personal jurisdiction over Leck only and that Plaintiff fails to state claims upon which relief can be granted. Specifically, RedX and Leck contend Edwards fails to state claims: (1) under the TCPA because neither RedX nor Leck directly placed the calls at issue, (2) for consumer fraud under the Nevada Revised Statutes with sufficient particularity, (3) for vicarious liability, and (4) for concert of action.[15]

---

[5] ECF No. 44.
[6] ECF Nos. 49 and 50.
[7] ECF No. 52.
[8] ECF Nos. 51 and 54. The Court is also in receipt of Cole and Eggleston's unopposed Proposed Discovery Plan and Scheduling Order. ECF No. 45.
[9] ECF No. 56.
[10] ECF No. 59.
[11] ECF No. 58.
[12] ECF Nos. 61 and 62.
[13] ECF Nos. 60 and 63.
[14] 47 U.S.C. § 227; NRS §§ 228.500-228.640, 597.812-597.818, and 598.0903-598.0999.
[15] ECF No. 5 at 6, 10, 15, 16. "Vicarious liability" is not an independent cause of action but, rather, a theory assigning liability. *Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 (D. Nev. 2013). Further, "concert of action" is not an independent cause of action in and of itself, but must be premised on an intentional tort. *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 (1980).

On March 30, 2020, Cole and Eggleston filed their Motion to Dismiss Plaintiff's Amended Complaint, arguing that the Court lacks personal jurisdiction over both Defendants, and that Plaintiff fails to state claims upon which relief can be granted.[16]

On April 10, 2020, Cole and Eggleston filed their Motion to Stay Discovery pending resolution of their Motion to Dismiss.[17] Cole and Eggleston maintain their Motion to Dismiss will be granted because Cole is a Nebraska corporation with its principal place of business in Nebraska while Eggleston is domiciled in Nebraska.[18] Further, Cole and Eggleston claim neither expressly aimed intentional, harmful conduct at Nevada necessary to establish specific personal jurisdiction.[19] Cole and Eggleston argue that Plaintiff fails to state claims upon which relief can be granted because neither of these Defendants directly placed the phone calls at issue, which they allege is a necessary element of a TCPA claim.[20] Finally, Cole and Eggleston insist Plaintiff's state law claims fail because Nevada's Deceptive Trade Practices Act also requires a defendant to directly place a call, and the other two statutes pleaded do not provide for a private right of action.[21]

On April 24, 2020, Plaintiff filed his Opposition to Cole and Eggleston's Motion to Stay Discovery.[22] Plaintiff argues discovery will determine whether Cole and Eggleston have sufficient contacts with Nevada necessary for the exercise personal jurisdiction over these Defendants.[23] This is the entire focus of Plaintiff's Opposition.

On April 30, 2020, Cole and Eggleston filed their Reply in support of their Motion to Stay Discovery. These Defendants reiterate that the Court cannot exercise personal jurisdiction over them but, even if personal jurisdiction is present, Plaintiff's claims fail on the merits.[24]

---

[16] ECF No. 12.
[17] ECF No. 18.
[18] *Id*. at 4 (internal citations omitted).
[19] *Id*.
[20] *Id*. at 5-6.
[21] *Id*. at 6.
[22] ECF No. 41.
[23] *Id*. at 4-6.
[24] ECF No. 42 at 2.

## II.     DISCUSSION

### A.     Cole and Eggleston's Motion to Stay Discovery is denied because the Court finds it unlikely that the Motion to Dismiss will dispose of the entire action.

Generally, a dispositive motion does not warrant a stay of discovery.[25] "The party seeking a stay . . . has the burden to show good cause by demonstrating harm or prejudice that will result from the discovery."[26] Under certain circumstances it is an abuse of discretion to deny discovery while a dispositive motion is pending.[27] For this reason, a party seeking a discovery stay carries the "heavy burden" of making a strong showing why the discovery process should be halted.[28] When deciding whether to issue a stay, a court must take a "preliminary peek" at the merits of the dispositive motion pending in the case.[29] A court must consider whether the pending motion is potentially dispositive of the entire case, and whether that motion can be decided without additional discovery.[30]

*1.     There is a serious question as to whether the Court can exercise general jurisdiction over Cole and Eggleston, but much less of a question regarding whether the Court may exercise specific jurisdiction over these Defendants.*

Federal courts may exercise either specific or general personal jurisdiction over a defendant.[31] A defendant challenging personal jurisdiction carries the burden of establishing that discovery should be stayed.[32] Whether the Court can exercise personal jurisdiction over a defendant is a "critical preliminary question. However, it is not a question that mandates a stay of discovery. The Court retains its discretion to determine whether discovery should go forward."[33]

---

[25] *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011).
[26] *Rosenstein v. Clark Cnty. Sch. Dist.*, Case No. 2:13-cv-1443-JCM-VCF, 2014 WL 2835074, at *3 (D. Nev. June 23, 2014), *citing* Fed. R. Civ. P. 26(c)(1) (internal quotation marks omitted).
[27] *Tradebay*, 278 F.R.D. at 602.
[28] *Turner Broad. Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997).
[29] *Buckwalter v. Nevada Bd. of Med. Exam'rs*, Case No. 2:10-cv-02034-KJD-GWF, 2011 WL 841391, at *1 (D. Nev. Mar. 7, 2011).
[30] *Tradebay*, 278 F.R.D. at 602.
[31] *AMC Fabrication, Inc. v. KRD Trucking West, Inc.*, Case No. 2:12-cv-00146-LDG-CWH, 2012 WL 4846152, at *3 (D. Nev. Oct. 10, 2012) (internal citations omitted).
[32] *Holiday Sys. Intern. of Nev. v. Vivarelli, Schwarz, and Assocs., S.A. de. C.V.*, Case No. 2:10-cv-00471-MMD-GWF, 2012 WL 3860824, at *2 (D. Nev. Sept. 5, 2012).
[33] *AMC Fabrication, Inc.*, 2012 WL 4846152, at *2 (internal alteration and citation omitted).

       i.    <u>It is unlikely that the Court can exercise general personal jurisdiction over Cole and Eggleston.</u>

To establish general jurisdiction, a defendant must have sufficient contacts with the forum state to constitute the "kind of continuous and systematic general business contacts that approximate physical presence."[34] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"[35] "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business. . . . Only in an 'exceptional case' will general jurisdiction be available anywhere else."[36]

Here, Eggleston is domiciled in Nebraska, and Cole is a corporation with its principal place of business in Nebraska.[37] Further, Cole represents that it "has no offices or employees in Nevada," is "not registered to do business in Nevada, . . . does not have a registered agent for service of process in Nevada, and . . . pays no Nevada taxes."[38] These "contacts fall well short of the requisite showing of general jurisdiction."[39] Moreover, it may be true that Cole's employees visit Nevada three to four times per year to attend trade shows,[40] but "the attendance of trade shows is insufficient to give this Court general jurisdiction" over Cole and Eggleston.[41] Finally, Cole's operation of a website, even a "highly interactive" website, does not confer general jurisdiction upon this defendant.[42] Based on the above, the Court is reasonably convinced that it cannot exercise general personal jurisdiction over Cole nor Eggleston.

       ii.    <u>The Court may be able to exercise specific personal jurisdiction over Cole and Eggleston.</u>

A district court may exercise specific jurisdiction over a defendant if the cause of action "arises out of or relate to" the defendant's in-state activity.[43] Determining whether specific

---

[34] *Id*. at *3 (internal citation omitted).
[35] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).
[36] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (internal citations and quotation marks omitted).
[37] ECF No. 12 at 7, 11.
[38] *Id*. at 7 (internal citations omitted).
[39] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011).
[40] ECF No. 12-1 ¶ 6.
[41] *Digitone Indus. Co., Ltd. v. Phoenix Accessories, Inc.*, Case No. 2:08-cv-00404-RLH-RJJ, 2008 WL 2458194, at *3 (D. Nev. June 13, 2008) (internal citation omitted).
[42] *Mavrix Photo, Inc.*, 647 F.3d at 1226.
[43] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.[44] Because Nevada's long-arm statute, NRS § 14.065, reaches the "outer limits of federal constitutional due process," the Court need only analyze whether exercising specific jurisdiction over Cole and Eggleston comports with due process.[45]

To determine whether exercising personal jurisdiction over a particular defendant would violate due process, the presiding court applies a three-prong "minimum contacts" test that asks whether: "(1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable."[46] "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."[47] The minimum contacts test focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . It follows that a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[48]

### a.   Purposeful Direction or Availment

In the Ninth Circuit, the test used to establish purposeful direction or availment depends on the nature of the underlying claim.[49] A "purposeful availment analysis is used in suits sounding in contract" while a "purposeful direction analysis is used in suits sounding in tort."[50] Here, the allegations sounds in tort; therefore, the purposeful direction test applies.

Purposeful direction requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered

---

[44] *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177, 1180 (9th Cir. 2004).
[45] *Certain-Teed Prods. Corp. v. Second Judicial Dist. Ct.*, 479 P.2d 781, 784 (Nev. 1971).
[46] *In re W. States Wholesale Natural Gas Litig.*, 605 F.Supp.2d 1118, 1131 (D. Nev. 2009) (internal citation omitted).
[47] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).
[48] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (internal citations and quotation marks omitted).
[49] *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).
[50] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal citations omitted).

in the forum state."[51]  These requirements ensure that a nonresident defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts.[52]

Plaintiff maintains Cole and Eggleston purposefully directed their intentional acts towards Nevada because for the previous fifteen years or more:

- Defendants COLE & EGGLESTON . . . contacted, met with, served, and sold, leased, or obtained subscriptions from numerous business[es], municipalities, and entities in the forum Stat[e] of Nevada; . . .

- Defendants COLE & EGGLESTON . . . continuously promoted and sold [their] products and services in Las Vegas, Nevada; . . .

- Defendants COLE & EGGLESTON purposefully availed themselves when [they] affirmatively acted to promote or solicit [their] business products and services within Nevada, including when [they] directly contacted Defendants CENTURY 21 & [Juan Martinez or] J.MARTINEZ, one (1) of many Nevada customer[s]; and, . . .

- Defendant EGGLESTON, and his representatives, visited Nevada to solicit business, including contacting Defendants CENTURY 21 & J.MARTINEZ.[53]

In support of his purposeful direction argument, Edwards attaches screenshots of email exchanges documenting business transactions between Cole's employees and two of the Nevada-based Century 21 Defendants.[54]  Notwithstanding the above, making telephone calls or sending letters and emails to the forum state is legally insufficient to permit the Court to exercise personal jurisdiction over a non-resident defendant.[55]  Therefore, Edwards' jurisdictional arguments based on Cole and Eggleston's business communications with the Century 21 Defendants in and of themselves do not have merit.

Cole insists it did not purposefully direct its personal acts toward Nevada because it "did not know that other defendants in this case were placing phone calls to Edwards," and Eggleston claims he "did not even know who Edwards was until the filing of this lawsuit."[56]  Although it is true that

---

[51] *Reflex Media, Inc. v. SuccessfulMatch.com*, Case No. 2:18-cv-00259-GMN-GWF, 2019 WL 1177962, at *3 (D. Nev. Mar. 11, 2019) (internal citations and quotation marks omitted).
[52] *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted).
[53] ECF No. 41 at 13 (internal alteration omitted).
[54] ECF Nos. 41-1 at 2-3 and 41-4 at 2-3.
[55] *Coast Equities, LLC v. Right Buy Props.*, 701 Fed. App'x 611, 613 (9th Cir. 2017).
[56] ECF No. 18 at 5 (internal citations omitted); *see also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (providing that the express aiming requirement is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state") (internal citations and quotation marks omitted).

7

a "plaintiff cannot be the only link between the defendant and the forum,"[57] a court retains the power to exercise specific jurisdiction over nonresident defendants when they purposefully derive commercial benefit from their interstate activities.[58]

Here, Plaintiff contends that Cole holds itself out as "offering unlimited access to a database containing subscribers['] cell phone telephone numbers, email addresses, and subscribers['] landline telephone numbers" for sale to realtors, including the Nevada-based Century 21 Defendants.[59] Further, Cole and Eggleston allegedly sought to promote their business in Nevada by purposely advertising, marketing or selling products to Nevada residents.[60] Plaintiff alleges these Defendants sold and leased their database subscriptions to Nevada businesses for over fifteen years.[61] Eggleston admits he has "visited Nevada to attend trade shows" but states, in conclusory fashion, that "these trade shows are unrelated to the Plaintiff's claims and therefore cannot give rise to specific jurisdiction."[62]

As stated by the District of Nevada, a defendant's participation as an exhibitor at trade shows "indicates an intent to transact business in Nevada . . . . In this regard, . . . it significant that" neither Cole nor Eggleston "rebut, deny, or otherwise qualify the extent to which it [or he] conduct[] activity at the trade shows."[63] Defendants' activities at trade shows "conducting promotional activities, exhibiting . . . products, and establishing business relationships, . . . [are] commercial exercises directly supporting" allegations of purposeful direction and, therefore, could "hardly be seen as random, fortuitous, or attenuated contacts with Nevada."[64] Moreover, while it is uncertain how passive or interactive Cole's business website is, this is of no consequence because "operating even

---

[57] *Walden v. Fiore*, 571 U.S. 277, 286 (2014).
[58] *Burger King Corp.*, 471 U.S. at 473-74 (internal quotation marks omitted).
[59] ECF No. 1-4 at 184 ¶¶ 6, 8.
[60] *Rigdon v. Bluff City Transfer & Storage Co.*, 649 F.Supp. 263, 268 (D. Nev. 1986) (finding defendants purposely derived benefits of doing business in Nevada because they intended to expand their service to Nevada residents).
[61] ECF No. 41 at 4.
[62] ECF No. 12 at 11 (internal citations omitted).
[63] *Prescott v. Slide Fire Solutions, LP*, 341 F.Supp.3d 1175, 1185 (D. Nev. 2018) (internal citations omitted).
[64] *Robert Bosch LLC v. ADM 21 Co., Ltd.*, No. 2:10-cv-01930-RLH-LRL, 2011 WL 2619335, at *4 (D. Nev. July 1, 2011) (internal citations and quotation marks omitted).

a passive website in conjunction with something more—conduct directly targeting the forum—is sufficient to confer personal jurisdiction."[65]

Cole and Eggleston argue that neither foresaw harm would be caused in Nevada because the Century 21 Defendants did not indicate they would use the databases for telemarketing purposes.[66] However, foreseeability of injury in a forum is not a "sufficient benchmark" for exercising personal jurisdiction.[67] Rather, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[68] As explained above, Plaintiff alleges sufficient facts to suggest that exercising specific jurisdiction over Cole and Eggleston would not be random, fortuitous, or attenuated. While not conclusive, the Court is unconvinced that Cole and Eggleston did not expressly direct their intentional, harmful acts towards Nevada in this case.

b.   Nexus between Claims and Contacts

The Ninth Circuit employs a "but-for" test to determine whether a particular claim arises out of forum-related activities.[69] This test asks whether the plaintiff's claims against the defendant would have arisen but for a defendant's contacts with the forum state.[70] Plaintiff's claims appear to arise out of or result from Cole and Eggleston's forum-related activities.[71] That is, but for Cole and Eggleston's sale of databases containing contact information, there would not be any claims against either of them because the Century 21 Defendants would not have obtained Plaintiff's phone number.

c.   Reasonableness

A court presumes maintaining personal jurisdiction over a nonresident defendant is reasonable upon a showing of purposeful direction.[72] This presumption can be "overcome by a

---

[65] *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (internal citation and quotation marks omitted).
[66] ECF No. 12 at 9.
[67] *Burger King Corp.*, 471 U.S. at 474 (internal quotation marks omitted).
[68] *Id.* (internal citation and quotation marks omitted).
[69] *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).
[70] *Id.*
[71] *Cf. I Q Techs., Inc. v. Healthmate Int'l, LLC*, Case No. 2:16-cv-00240-APG-NJK, 2016 WL 3010823, at *2 (D. Nev. Apr. 27, 2016) ("Nor do the defendants' alleged in-forum sales support specific jurisdiction because the plaintiff does not allege its injuries arise out of or relate to any of those sales.") (internal citation omitted).
[72] *Burger King Corp.*, 471 U.S. at 477.

compelling case that the presence of other considerations would render jurisdiction unreasonable."[73] In determining whether the exercise of jurisdiction is reasonable, courts weigh the following seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum."[74]

"[T]he burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of [the] other relevant factors."[75]

A preliminary peek at the pending Motion to Dismiss leads the Court to find exercising specific jurisdiction over Cole and Eggleston is likely reasonable. The extent of Cole and Eggleston's purposely directed activities towards Nevada is discussed at length above. It is reasonable to litigate a dispute arising out of the sale of a Nevada resident's phone number to a Nevada realtor in Nevada federal court. This is because the "site where the injury occurred and where evidence is located usually will be the most efficient forum."[76] Moreover, Nevada's "interest in providing a forum for its residents[] weighs in favor of reasonableness."[77] Further, neither Defendant has shown, let alone argued, that "litigating this case in Nevada . . . would be burdensome."[78] Indeed, neither Cole nor Eggleston allege evidence of any real or purported conflict of interest between Nevada and Nebraska in hearing this dispute. Taking these factors together, the Court believes it is reasonable to exercise specific personal jurisdiction over Cole and Eggleston and, thus, the Court finds it is unlikely that the pending Motion to Dismiss will be granted on the basis of lack of specific personal jurisdiction over Cole and Eggleston.

---

[73] *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (internal citation and quotation marks omitted).
[74] *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013) (internal citation omitted).
[75] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).
[76] *Pacific Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985) (internal citation omitted).
[77] *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006).
[78] *Arik v. Meyers*, Case No.: 2:19-cv-01098-JAD-NJK, 2020 WL 4331530, at *4 (D. Nev. July 24, 2020); *see also id.* at 1175.

       *2.* *Plaintiff may state a plausible TCPA claim upon which relief can be granted against Cole and Eggleston.*

  The elements of a TCPA claim are: (1) the defendant called a cellular telephone number, (2) using an automatic telephone dialing system, and (3) without the recipient's prior express consent.[79] Cole and Eggleston argue that Plaintiff cannot establish the first element of his TCPA claim because neither Defendant placed the calls at issue.[80] "Rather, Cole is merely alleged to have supplied other defendants in this action with Edwards' cell phone and landline numbers."[81] However, this fact does not end the analysis of liability. The present factual circumstances are analogous to those in *Kristensen v. Credit Payment Servs.* ("*Kristensen I*") where a plaintiff initiated a class action against, *inter alia*, a payday lender and its marketers (the "Lender Defendants"), who allegedly sent him a text message without prior consent.[82] In his first amended complaint, Kristensen alleged the Lender Defendants contracted with a co-defendant named LeadPile to generate customers.[83] In turn, the plaintiff claimed LeadPile contracted with other companies, "including [co-defendant] Click Media, to generate leads and drive web traffic to Defendants' websites. Next, Click Media allegedly 'directed' various unnamed 'affiliate marketers to transmit *en masse* text messages containing "links" that direct[ed] consumers to various websites operated by Defendants and/or their agents.'"[84]

  Click Media and LeadPile filed separate motions to dismiss Kristensen's first amended complaint arguing he failed to sufficiently allege that either Click Media or its purported agents directly sent the text message at issue to him.[85] Click Media and LeadPile's motions to dismiss were denied.[86] The court reasoned that vicarious liability under the TCPA is governed by the common law principles of agency and that an agency relationship could arise in this instance by ratification.[87] The district court found Kristensen pleaded sufficient facts in his first amended complaint demonstrating "there was a 'downhill' series of contractual relationships" that ultimately led back

---

[79]  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *citing* 47 U.S.C. § 227(b)(1).
[80]  ECF No. 42 at 2, *citing* ECF No. 1-4 at (vi)(9).
[81]  *Id*. (internal citations omitted).
[82]  12 F.Supp.3d 1292 (D. Nev. 2014).
[83]  *Id*. at 1297.
[84]  *Id*.
[85]  *Id*. at 1298.
[86]  *Id*. at 1302.
[87]  *Id*. at 1301.

11

uphill "through Click Media and LeadPile to the Lender defendants."[88] The court also found that the plaintiff sufficiently pleaded a "plausible agency relationship based on actual authority (arising through contractual relationships), apparent authority (based on a reasonable person's perception of who authorized the sending of the text message), and ratification (based on the apparent benefits received by Click Media and LeadPile)."[89] The court, however, granted summary judgment in favor of the defendants after the parties finished conducting discovery because the plaintiffs failed to create a triable issue as to why defendants should be vicariously liable for the entity who actually sent the texts.[90]

Cole and Eggleston argue that Plaintiff fails to plead facts establishing a plausible agency relationship among the Defendants based on actual authority, apparent authority, or ratification despite the fact that Plaintiff has not had the benefit of discovery to explore Defendants' contractual relationships. Plaintiff's argument in support of discovery to oppose the pending Motion to Dismiss is well-taken, especially where the Motion implicates factual issues as to the "identity of every player in the alleged scheme [and the] nuance of the relationships among the Defendants; . . . indeed, the information necessary to connect all the players is likely in Defendants' sole possession."[91]

In support of agency by actual authority, Plaintiff plausibly alleges Eggleston, as "President, CEO, and Director of, by, and for Defendant Cole, oversees and provides leadership, direction and guidance for all [of Cole's] daily business activities," including the sale of its products and services.[92] Plaintiff alleges Cole, under Eggleston's direction, enters contractual relationships with and sells telephone numbers to realtors, including one or more of the Century 21 Defendants who in turn provided Defendant Tamez, the individual who made the calls at issue, "with various databases and lead generating and real estate prospecting platforms."[93] With respect to apparent authority, Cole and Eggleston point out that "no apparent authority [can be] created by an undisclosed

---

[88] *Id*. at 1302.
[89] *Id*.
[90] *Kristensen v. Credit Payment Servs. Inc.*, Case No. 2:12-cv-00528-APG-PAL, 2015 WL 4477425, at *1 (July 20, 2015).
[91] *Kristensen I*, 12 F.Supp.3d at 1302; *cf. Tradebay*, 278 F.R.D. at 608 (granting a stay of discovery in part because the plaintiff did "not claim that it needs any discovery to oppose the motion to dismiss," which "raise[d] no factual issues, and [would] be decided purely on issues of law.").
[92] ECF No. 1-4 at 197-98 ¶¶ 2-3, 6.
[93] *Id*. at 192 ¶ 7; *see also id*. at 184 ¶ 8.

12

principal," but these defendants also recognize that Plaintiff claims "Defendant Tamez admitted that he obtained Edwards' number from a Cole database."[94] This allegation supports agency by apparent authority, which "depends on whether a reasonable person would believe that the [dialer] of the [phone calls], or the person that caused the [phone calls] to be [dialed], had authority to act on behalf of Defendants."[95] Finally, in support of ratification, Plaintiff alleges that Cole and Eggleston benefited from this relationship as they "previously earned, and continues to earn[,] tens-of-thousands of dollars by causing the engaging of placing, through the utilization of . . . illegal and unauthorized telemarketing and solicitation telephone calls (within Clark County, Nevada)."[96]

With respect to the other two elements of a TCPA claim, Plaintiff claims he did not consent to receive the phone calls and that they were sent using an automatic telephone dialing system.[97] Accepting all well-pleaded material fact alleged in the Amended Complaint as true and in the light most favorable to Edwards when assessing the merits of Cole and Eggleston's Motion to Dismiss,[98] the Court is unconvinced that Plaintiff fails to state a plausible claim for relief under the TCPA.

Based on the foregoing, Cole and Eggleston failed to carry the heavy burden of showing why discovery should be denied at this juncture.

**B.    RedX and Leck's Joinder to the Motion to Stay Discovery is denied because their Motion to Dismiss is unlikely to dispose of this entire action.**

*1.    The Court may be able to exercise specific jurisdiction over Leck.*

Leck is domiciled in Utah, and he represents that "he does not own property in Nevada, is not associated with any Nevada business, does not hold any licenses in Nevada[,] and has not sought the protections and benefits of Nevada law."[99] These facts preclude the exercise of general jurisdiction over Leck.[100] However, the Court is unconvinced that an exercise of specific jurisdiction

---

[94]    ECF No. 12 at 17 (internal citations and quotation marks omitted).
[95]    *Kristensen I*, 12 F.Supp.3d at 1306.
[96]    ECF No. 1-4 at 199-200 ¶ 14 (internal alteration omitted).
[97]    Plaintiff alleges the phone calls at issue were made "absent any [prior] authorization, or consent, by Plaintiff, to cause such calls to Plaintiff's residential and cellular telephone numbers" (*id*. at 172 ¶ 5) by an individual "utilizing an Automatic Telephone Dialing System." *Id*. at 193 ¶ 9.
[98]    *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).
[99]    ECF No. 5 at 6, 9.
[100]   *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F.Supp.2d 1180, 1191 (D. Nev. 2010) (internal citation omitted).

over Leck would violate due process. First, Leck falls short of demonstrating that he did not expressly aim his intentional, harmful acts towards Nevada for the reasons below. Second, Leck argues the fiduciary shield doctrine insulates him from an exercise of specific jurisdiction by this Court because all of the proposed discovery relates to RedX's contacts with Nevada.[101] It is true that "[u]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."[102] Rather, a presiding court is tasked with assessing each defendant's contacts individually.[103] However, the very case to which Leck cites also emphasizes the "limited" application of the fiduciary shield doctrine, stating that although a court cannot acquire personal jurisdiction over employees based on their employers' forum activities alone, their "status as employees does not somehow insulate them from jurisdiction."[104] In fact, the presiding court in that matter granted the plaintiffs' motion for jurisdictional discovery as the plaintiffs provided evidence that the individual defendants "were not simply uninvolved corporate officers because they personally controlled and participated in the alleged wrongful activity" and plaintiffs had "not yet had the opportunity to obtain discovery on these issues."[105]

As previously stated, the Supreme Court has deemed it "unfair" to allow a nonresident defendant to circumvent obligations that arise from his interstate activities' purposefully derived benefits.[106] At present, Plaintiff claims Leck purposefully directed his intentional acts towards the forum state of Nevada because this Defendant:

- sells "products and services to numerous businesses, municipalities, and entities with the forum State of Nevada," and

- sends RedX's "sales consultants to participate in industry events; educational seminars; conferences; and trade shows to sell their products and services to businesses, municipalities, and entities located within the forum State of Nevada."[107]

---

[101] ECF No. 58 at 4, *citing in part Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1158 (D. Nev. 2009).
[102] *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).
[103] *Klein*, 595 F.Supp.2d at 1159 (internal citations omitted).
[104] *Id.* at 1158-59 (citations and quotation marks omitted).
[105] *Id.* at 1160.
[106] *Burger King Corp.*, 471 U.S. at 474.
[107] *Id.* (internal alteration omitted).

Plaintiff asserts that Leck personally oversaw and provided "leadership, direction, and guidance for all the daily business activities" of RedX, including the company's "marketing strategies, schemes, and sales."[108] Relying on discovery responses produced in state court, Edwards further avers Leck "conducted the business of selling/leasing/servicing his products and services since (at a minimum) 2015."[109] Plaintiff also represents that no discovery has been propounded to Leck directly, which has hampered his efforts to provide facts in support of the Court's jurisdiction over this Defendant.[110] In sum, a preliminary peek at the Motion to Dismiss convinces the Court that Leck's Motion to Dismiss will not dispose of Plaintiff's claims in their entirety based on a lack of jurisdiction.

Finally, Leck does not discuss any of the factors courts weigh to assess the reasonableness of exercising specific jurisdiction in his briefings. Applying these factors, the Court reiterates that it is reasonable to litigate a dispute arising out of the sale of a Nevada resident's phone number to a Nevada realtor in Nevada federal court. Nevada also has an interest in providing a forum for Edwards,[111] which will likely be the most efficient forum as it is where the calls at issue took place.[112] Moreover, Leck does not claim he will be burdened if he were to litigate this dispute here. Nor does he provide evidence of any conflict of interest between Utah and Nevada in adjudicating this matter. In sum, this Court believes it is reasonable to exercise specific personal jurisdiction over Leck.

> 2. *Plaintiff may state a plausible TCPA claim upon which relief can be granted against RedX and Leck.*

RedX and Leck argue that Plaintiff cannot establish the first element of his TCPA claim because neither placed the calls at issue.[113] "Instead, Plaintiff alleges that each of the four . . . calls was made by Defendant Tamez."[114] Accordingly, RedX and Leck claim Plaintiff fails to plead facts

---

[108]  ECF No. 1-4 at 194-95 ¶¶ 2-3, 6.
[109]  ECF No. 19 at 15.
[110]  ECF No. 41 at 8.
[111]  *Tuazon*, 433 F.3d at 1176.
[112]  *Pacific Atl. Trading Co.*, 758 F.2d at 1331.
[113]  ECF No. 5 at 6.
[114]  *Id*. (internal citations omitted).

15

establishing a plausible agency relationship amongst these Defendants that give rise to vicarious liability.[115]

Plaintiff does not appear to plausibly allege agency by apparent authority because Plaintiff only states that Defendant Tamez "admits . . . he obtained Plaintiff's telephone number(s) from a database, provided by subscription from *Defendant COLE*."[116] Based on this information, a reasonable person would not believe that Tamez had authority to act on behalf of Leck or RedX.[117]

However, Plaintiff may present plausible TCPA claims against RedX and Leck based on agency by actual authority or ratification. That is, Plaintiff plausibly alleges Leck, as "Founder, President, CEO, Director, and Manager of, by, and for Defendant RedX," provides "leadership, direction and guidance for all the daily business activities of" RedX, including the sale of its products and services.[118] Under Leck's direction, Plaintiff alleges RedX enters contractual relationships with and sells "lists of leads that are configured to be loaded into its accompanying . . . autodialer product" as well as its "all-in-one prospecting platform for generating listing appointments" to realtors, including one or more of the Century 21 Defendants, including Defendant Tamez.[119] In support of his ratification theory, Plaintiff alleges RedX benefited from this relationship insofar it "earned, and continues to earn tens of thousands of dollars by and through the sale of its autodialer [and] lead generating platform . . . that contains and incorporates landline . . . and wireless . . . telephone numbers, such as Plaintiff's[.]"[120] The Court has already determined that Plaintiff sufficiently claims he did not consent to receive the phone calls and that they were sent using an automatic telephone dialing system.[121]

The Court is therefore unconvinced that Plaintiff fails to state a plausible TCPA claim against RedX and Leck, and these Defendants fail to carry their heavy burden of showing why discovery should be stayed.[122] Because the Court denies Cole and Eggleston's Motion to Stay Discovery as to

---

[115] ECF No. 12 at 14.
[116] ECF No. 1-4 at 184 ¶ 9 (emphasis added).
[117] *Kristensen I*, 12 F.Supp.3d at 1306.
[118] ECF No. 1-4 at 194 ¶¶ 2-4, 6.
[119] *Id.* at 181-82 ¶ 9, 11-12.
[120] *Id.* at 182-183 ¶ 15 (internal alteration omitted).
[121] *Id.* at 172 ¶ 5, 193 ¶ 9.
[122] *Turner Broad. Sys. Inc.*, 175 F.R.D. at 556.

16

all Defendants that joined in the Motion, it also denies their Proposed Discovery Plan and Scheduling Order, which requests that discovery be stayed until the Court rules on the pending motions to dismiss, as moot.

### C. Plaintiff's Motion to Compel is denied as moot.

Plaintiff requests the Court compel the Defendants to allow him to record the Rule 26(f) conference. Each of Defendants' attorneys objected to Plaintiff's request over a series of email exchanges between the parties. Defendants also circulated a proposed discovery plan and scheduling order over email, but Plaintiff declined to provide any suggested edits or offer his own version in response. Defendants therefore filed their now-denied Proposed Discovery Plan and Scheduling Order without providing Plaintiff's positions on the parties' respective discovery obligations.

Given the issuance of a scheduling order below, no Rule 26(f) conference is necessary. Accordingly, the Court denies Plaintiff's Motion to Compel as moot.

### D. Plaintiff's Motion for Leave to Conduct Limited, Expedited Discovery is denied as moot.

Plaintiff requests leave to conduct limited, expedited jurisdictional discovery into RedX, Leck, Cole, and Eggleston's contacts with the state of Nevada.[123] Given that Cole and Eggleston's Motion to Stay Discovery is denied, Plaintiff's Motion to Conduct Limited, Expedited Discovery is denied as moot.

## III.   ORDER

Accordingly,

IT IS HEREBY ORDERED that Defendants Cole Information Services, Inc. and Jim Eggleston's Motion to Stay Discovery (ECF No. 18) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel (ECF No. 44) is DENIED as moot.

IT IS FURTHER ORDERED that Defendants Cole Information Services, Inc. and Jim Eggleston's Proposed Discovery Plan and Scheduling Order (ECF No. 45) is DENIED as moot.

---

[123] ECF No. 56 at 5-13.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Conduct Limited, Expedited Discovery (ECF No. 56) is DENIED as moot.

IT IS FURTHER ORDERED that the following scheduling order applies:

1. DISCOVERY: Pursuant to LR 26-1(b), discovery in this action must be completed on or before **120 court days** from the date of this Order, which is **January 20, 2021**.

2. Amendments to pleadings as provided for under Fed. R. Civ. P. 15, if the same are allowed without leave of Court, or motions for leave to amend, must comply with LR 15-1 and must be filed and served within **ninety (90) court days** prior to the close of discovery, which is **October 22, 2020**.

3. Initial Expert disclosures shall be made on or before **November 20, 2020**, and the disclosures of rebuttal experts shall be made on or before **December 21, 2020**. All disclosure must comply with Fed. R. Civ. P. 26(a)(2).

4. Dispositive Motions shall be filed and served no later than **February 19, 2021**.

5. The Joint Pretrial Order shall be filed and served no later than **March 22, 2021**. If dispositive motions are filed, the date for filing the joint pretrial order must be suspended until **thirty (30) court days** after a decision of the dispositive motions or until further order of the Court.

6. Fed. R. Civ. P. 26(a)(3) Disclosures: The disclosures required by Fed. R. Civ. P. 26(a)(3), and any objections thereto, shall be included in the joint pretrial order.

7. EXTENSIONS OF DISCOVERY: Pursuant to LR 26-3, an extension of the discovery deadlines will not be allowed without a showing of good cause. All motions or stipulations to extend discovery must be received by the Court at least **twenty-one (21) court days** prior to the expiration of any extension thereof that may have been approved by the Court. The motion or stipulation must include:

    a. A statement specifying the discovery completed by the parties as of the date of the motion or stipulation;

    b. A specific description of the discovery which remains to be completed;

    c.  The reasons why such remaining discovery was not completed within the time limit of the existing discovery deadline; and,

    d.  A proposed schedule for the completion of all remaining discovery.

Any party who desires an amendment to this Scheduling Order must, within **thirty (30) court days** hereof or by **October 22, 2020**, file and serve a statement of proposed amendments and the reasons therefor.  Each other party must then have **fourteen (14) court days** within which to file and serve a response thereto.  After expiration of the thirty-day period, any amendment of this Scheduling Order must be granted only upon motion and good cause shown.

DATED THIS 22nd day of September, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE