**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Paul D.S. Edwards,

    Plaintiff

v.

Juan Martinez, Inc., et al.,

    Defendants

Case No.: 2:20-cv-00570-JAD-EJY

**Order Dismissing Claims and Parties, Granting in Part Motions for a More Definite Statement and to Strike, and Denying Plaintiff's Motion to Compel**

[ECF Nos. 5, 9, 11, 12, 74]

Plaintiff Paul Edwards sues Cole Information Services, Inc. and RedX, LLC; their respective CEOs, Jim Eggleston and Mark Leck; and a handful of Century 21 realtors for violating the Telephone Consumer Protection Act (TCPA) and various Nevada laws after Sergio Tamez telephoned Edwards one morning.[1] RedX and Cole Information separately move to dismiss Edwards's complaint, arguing that this court lacks personal jurisdiction over Cole Information, Eggleston, and Leck, and that Edwards's claims are insufficiently pled.[2] RedX also moves for a more definite statement and to strike portions of Edwards's complaint.[3] Edwards seeks to compel Eggleston and Cole Information to supply discovery.[4]

Because Edwards fails to demonstrate that this court can exercise general or specific jurisdiction over nonresidents Eggleston, Leck, and Cole Information, I grant their motions to dismiss. Dismissing the claims against those defendants renders Edwards's motion to compel moot, so I deny it. Next, I hold that even if personal jurisdiction existed over those defendants,

---

[1] ECF No. 1-4 (amended complaint).

[2] ECF Nos. 5 (corrected at ECF No. 8-1) (RedX/Leck motion to dismiss), 12 (Cole Information/Eggleston motion to dismiss).

[3] ECF Nos. 9 (motion to strike), 11 (motion for a more definite statement).

[4] ECF No. 74 (motion to compel).

Edwards still cannot allege plausible facts demonstrating that they or RedX can be held liable under the TCPA because they are merely information providers that did not direct, authorize, or control the offending call to Edwards.  I also dismiss Edwards's Nevada-law claims and grant RedX's motion for a more definite statement—not only do many of the statutes Edwards cites lack a private right of action, but Edwards fails to adequately identify which Nevada laws support his claims.  Finally, I dismiss Edwards's claim for intrusion upon seclusion against Cole Information, RedX, and their CEOs with prejudice because he cannot allege facts demonstrating that any of those defendants committed an intentional act.  But I grant Edwards leave to amend that claim against the remaining defendants.

## Background

On January 17, 2019, Edwards received four unprompted telephone calls from Tamez, a realtor speaking on behalf of Century 21, who wanted to discuss real-estate opportunities in Edwards's neighborhood.[5]  Uninterested in the offer, Edwards expressed incredulity that Tamez would cold-call him, given that he'd listed his phone number on the national and state Do Not Call Registries.[6]  So Edwards sued Tamez and Century 21's owners in Nevada state court for violating the TCPA and various Nevada statutes, and for invading his privacy.[7]  After discovery commenced, Edwards amended his complaint to add claims against Utah-based RedX and Nebraska-based Cole Information, along with their CEOs Leck and Eggleston.[8]  According to Edwards, RedX provides an "all-in-one prospecting platform" that automatically places calls to

---

[5] ECF No. 1-4 at 201–07.

[6] *Id.* at 204, 208 n.40.

[7] *Id.* at 168–231.

[8] ECF No. 1.

potential customers.[9]  And Cole Information, who maintains a database of consumers' contact information, purportedly supplied Century 21 with Edwards's phone number.[10]  Edwards argues that these companies and their corporate officers are "vicariously liable" for Tamez's cold-calling because he "utilized" their "products and services."[11]

Cole Information removed the suit to this court[12] and it, along with RedX and the two companies' CEOs, now moves to dismiss Edwards's complaint, arguing that this court lacks personal jurisdiction over Leck, Eggleston, and Cole Information, and that Edwards's claims are insufficiently pled.[13]  RedX also moves to strike Edwards's complaint as needlessly prolix and prejudicial, while also moving for a more definite statement.[14]  Citing Eggleston's and Cole Information's refusal to participate in discovery, Edwards moves to compel both defendants to respond to his written discovery requests.[15]

## Discussion

### I.     Personal jurisdiction over Cole Information, Eggleston, and Leck

A federal court may dismiss an action under Federal Rule 12(b)(2) for lack of personal jurisdiction.  The Fourteenth Amendment's Due Process Clause limits a court's power to bind a defendant to a judgement in the state in which it sits.[16]  Where, as here, the defendant is a

---

[9] ECF No. 1-4 at 180–82.

[10] *Id.* at 183–84.

[11] *Id.* at 196, 199, 208–09.

[12] ECF No. 1.

[13] ECF Nos. 5, 12.

[14] ECF Nos. 9, 11.

[15] ECF No. 74.

[16] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  Because Nevada's long-arm statute grants courts jurisdiction over persons "on any basis not inconsistent with" the U.S. Constitution, the

nonresident, the court must determine whether that defendant has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[17] "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."[18] Edwards fails to plausibly allege facts supporting either basis to exercise jurisdiction over Eggleston, Leck, or Cole Information.

### A.     This court lacks general jurisdiction over Eggleston, Leck, and Cole Information.

Edwards claims that Eggleston, Cole Information, and Leck are subject to this court's general jurisdiction because those defendants, despite being foreign citizens and entities, directly sold their products in Nevada.[19] "For general jurisdiction to exist, a [nonresident] defendant must engage in 'continuous and systematic general business contacts,'" "approximat[ing] physical presence in the forum state," that are "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."[20] This is an "exacting standard," and courts should consider the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets" to find general jurisdiction appropriate.[21] "Only in an

---

jurisdictional analyses under state law and federal due process are identical.  *See id.*; Nev. Rev. Stat. § 14.065.

[17] *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and ellipsis omitted).

[18] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[19] *See* ECF Nos. 19 at 17, 30 at 6.

[20] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (internal quotation marks and citations omitted).

[21] *Id.* (internal quotation marks and citations omitted).

'exceptional case' will general jurisdiction be available anywhere" other than a party's state of incorporation, state of residence, or corporate headquarters.[22]

Edwards's complaint—largely centering on both companies' sale of products in Nevada via the internet—fails to set out an exceptional case.  It is axiomatic that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."[23]  In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court determined that exercising general jurisdiction over a nonresident company whose products flooded the forum was inappropriate because the company had no place of businesses, employees, or accounts in the forum.[24]  So too in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, where the Court held that a foreign company was not subject to the forum court's general jurisdiction, despite the defendant sending its CEO and employees to negotiate a contract in the forum and purchasing multiple products there.[25]  And in *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, which synthesized the reasoning in *Helicopteros* and *Goodyear Tires*, the Ninth Circuit held that the mere purchase and sale of products in the forum state, maintenance of business relationships with other companies in the forum, and operation of a "'highly interactive' website" accessible to forum residents is insufficient to support general jurisdiction.[26]

---

[22] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014)).

[23] *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) *overruled in part on other grounds Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

[24] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[25] *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 411 (1984).

[26] *Mavrix Photo, Inc.*, 647 F.3d at 1225.

Despite this established law, these are the exact contacts Edwards proffers to support general jurisdiction over these defendants, claiming that the exercise of jurisdiction is appropriate here because Nevada consumers purchased the defendants' products and Eggleston has attended trade shows in Nevada.[27]  And with respect to Leck, Edwards offers no substantiated allegations regarding his personal contact with Nevada at all, instead imputing RedX's sale of products in the state to Leck and vaguely gesturing to facts about Leck that he gleaned in discovery.[28]  But Edwards does not even bother to relay what Leck's actual contacts *are*, instead repeatedly making conclusory assertions like "Defendant LECK has had contact within Nevada . . . for the sole purpose of selling, leasing, and maintaining Defendant REDX' [sic] products and services."  These allegations, like those in *Helicopteros*, *Goodyear Tires*, and *Mavrix Photos*, fail to support general jurisdiction over Leck, Eggleston, and Cole Information in this state.

### B.     This court lacks specific jurisdiction over Eggleston, Leck, and Cole Information.

The absence of general jurisdiction does not end my inquiry.  A court may exercise specific jurisdiction over a defendant if its less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action "arises out of" or a has a substantial connection with those contacts.[29]  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the

---

[27] ECF No. 30 at 6–8.

[28] ECF No. 19 at 15.

[29] *Hanson v. Denckla*, 357 U.S. 235, 250–53 (1958).

defendant, the forum, and the litigation.'"[30]  In the Ninth Circuit, three requirements must be met for a court to exercise specific jurisdiction over nonresident tortfeasors: (1) the defendant must purposefully direct his activities toward the forum; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."[31]  The plaintiff bears the burden of satisfying the first two prongs; if he does so, the burden then switches to the defendant to set forth a "compelling case" that the exercise of jurisdiction is unreasonable.[32]  Failure to satisfy the first two prongs warrants dismissal.[33]

Edwards fails to allege that the defendants purposefully directed their conduct at the forum or that the defendants' forum-related contacts gave rise to his claims.  Courts apply the *Calder* "effects" test to determine whether a tortfeasor purposefully directed his activity to the forum, which generally requires a plaintiff to allege facts showing a defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state.[34]  Cole Information argues that its maintenance of a customer-information database, which is accessible anywhere, is hardly an intentional act

---

[30] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[31] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks omitted); *see also Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).  Because this is a tort-based dispute, I only address the "purposeful direction" test.  For claims sounding in contract, I would apply the "purposeful availment" test.  *See Axiom Foods, Inc*, 874 F.3d at 1068.

[32] *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (internal quotation marks omitted).

[33] *Id.*

[34] *Id.* at 1069 (internal quotation marks omitted).

expressly aimed at Nevada.[35]  Eggleston asserts that the only allegations describing his "intentional" conduct involve his oversight of his company and his visits to Nevada for trade shows, which are entirely unrelated to the claims at issue in Edwards's complaint.[36]  And Leck highlights the absence of any allegations in the complaint regarding his intentional conduct.[37]  Edwards pithily dismisses these as "familiar arguments," and asserts that the defendants' "intentional choices and conduct to sell, lease, and service their business products within Nevada . . . allow[] this Court to retain personal jurisdiction."[38]

Edwards fails to meet his burden on the first two specific-jurisdiction prongs because he has not sufficiently alleged that Leck and Eggleston purposefully directed activity to Nevada, or that his claims "arise from" Eggleston's forum-related conduct.  As the Supreme Court clarified in *Walden v. Fiore*, "[t]he proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."[39]  Here, Edwards provides no allegations regarding Leck's intentional conduct, much less allegations linking that conduct to Nevada or explaining how Leck has personally, knowingly, and meaningfully caused harm in the state.  As for Eggleston, Edwards only alleges that he came to Nevada for trade shows to sell products.[40]  While this might satisfy the first two elements of the *Calder* effects test, Edwards fails to draw the connection between those trips to Nevada and the harm he experienced because of Tamez's call, so as to satisfy the test's third prong.  This pleading deficit also guts Edwards's showing that his

---

[35] ECF No. 12 at 8–10.

[36] *Id.* at 11–12.

[37] ECF No. 8-1 at 10.

[38] ECF No. 30 at 9, 12.

[39] *Walden*, 571 U.S. at 290.

[40] ECF No. 30 at 6.

claims "arise-from" Eggleston's forum-related contacts and that those contacts are the "but-for" cause of his claims.[41]  The Ninth Circuit has repeatedly reasoned that business trips to the forum, without allegations connecting those trips to a plaintiff's claims, are an inadequate but-for cause to justify the exercise of jurisdiction.[42]

Though a closer call, I also find that Cole Information has not purposefully directed activity to Nevada sufficient to give rise to jurisdiction in this forum.  Edwards couches his argument in a "stream-of-commerce" theory of specific jurisdiction, claiming that Cole Information sells a subscription-based service containing prospective-customer information accessible by Nevada citizens.[43]  But for such a theory to satisfy the specific-jurisdiction analysis, a plaintiff must allege "something more" than the mere sale of products in the forum.[44] Instead, the plaintiff must show a "substantial connection" between the defendant and the forum state, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state."[45]  While Edwards has certainly alleged that Cole Information has made sales of its

---

[41] *See, e.g.*, *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1400 (9th Cir. 1986) (holding that the cause of action must arise out of forum-related activities for specific jurisdiction to attach).

[42] *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) ("The physical contacts—approximately forty business trips over a five-year period—do not of themselves weigh in favor of an exercise of specific jurisdiction because they are not related to the claims made against [defendants]."); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("However, these physical contacts of themselves do not weigh in favor of an exercise of specific jurisdiction, because Ballard's case against the Bank does not concern the Bank's business trips to America.")

[43] ECF No. 12 at 9–10.

[44] *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987).

[45] *Id.*

products in Nevada, he has not alleged that "something more"—namely, some specific

connection between Cole Information, Nevada, and his injury.  And Edwards has certainly not

alleged that Cole Information could reasonably infer that harm to Nevada citizens might occur

because of its products.  Accordingly, hailing Cole Information into court here would not

comport with the Due Process Clause, and I decline to exercise personal jurisdiction over Cole

Information, Leck, or Eggleston, and dismiss Edwards's claims against those defendants.  And

because Eggleston and Cole Information are no longer parties to this lawsuit, I deny as moot

Edwards's motion to compel discovery from those defendants.

## II.   Edwards's substantive claims

Having dismissed Edwards's claims against Cole Information, Leck, and Eggleston for

lack of personal jurisdiction, I now turn to RedX's motion to dismiss and consider whether

Edwards's complaint meets Federal Rule of Civil Procedure 8's requirements.  I find it does not.

And because I may "assume the existence of personal jurisdiction" over the dismissed

defendants to "adjudicate the merits in [their] favor," I also consider Cole Information's

arguments in favor of dismissal.[46]

Rule 8 requires every complaint to contain "[a] short and plain statement of the claim

showing that the pleader is entitled to relief."[47]  While Rule 8 does not require detailed factual

allegations, the properly pled claim must contain enough facts to "state a claim to relief that is

plausible on its face."[48]  This "demands more than an unadorned, the-defendant-unlawfully-

---

[46] *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *see Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 n.1 (9th Cir. 1998).

[47] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[48] *Twombly*, 550 U.S. at 570.

harmed-me accusation;" the facts alleged must raise the claim "above the speculative level."[49]   In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[50]   A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[51]

### A.   TCPA claims

Edwards admits that RedX, Cole Information, and their CEOs did not personally call him, but he claims that they are "vicariously liable" under the TCPA because Tamez used their products to reach him.[52]   The TCPA makes it unlawful for a person "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a cellular telephone service . . . or any service for which the called party is charged for the call."[53]   The plain language of the statute assigns civil liability to the party who "makes" the call.[54]   But the Ninth Circuit has affirmed "the existence of vicarious liability"[55] for those that maintain an agency relationship with the caller, and "a defendant is vicariously liable for violations of the TCPA where common law principals of agency would impose it."[56]   "These

---

[49] *Iqbal*, 556 U.S. at 678.

[50] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[51] *Id.* at 570.

[52] ECF No. 30.

[53] 47 U.S.C. § 227(b)(1)(A)(iii).

[54] *Id.*

[55] *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014).

[56] *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449–50 (9th Cir. 2018).

1 various paths correspond with the bedrock theories of agency: actual authority, apparent

2 authority, ratification, and employment (respondeat superior)."[57]

3        The Ninth Circuit does not appear to have squarely addressed whether a provider of

4 technology and software allegedly used to facilitate cold calling may be held vicariously liable

5 under the TCPA.  That court has, instead, dealt with principals seeking to evade TCPA liability

6 for communications made by their employees, independent contractors, or by third-party

7 marketers.[58]  In *Gomez v. Campbell-Ewald Co.*, for example, the court reasoned that the

8 defendant could be held "vicariously liable for the messages sent by" third-party marketers that it

9 directly hired to make calls.[59]  Likewise, in *Jones v. Royal Administration Services, Inc.*, the

10 panel reasoned that defendant could not be held liable for telemarketing calls made by

11 independent contractors.[60]  In evaluating whether the contractors were the defendant's agents,

12 the *Jones* court determined that while the defendant provided "sales scripts" and "tools and

13 instrumentalities" to the telemarketers making the calls, the defendant did not exercise control

14 over the telemarketers because it did not determine the full content of the call, the calls were

15 performed outside of its supervision, the telemarketers were paid by their own employers, and

16 the telemarketers were free to make calls for other companies.[61]  At its core, the *Jones* court

17

18

19

---

20 [57] *Id.* at 449.

21 [58] *See, e.g.*, *id.* (finding that telemarketers did not have "actual authority to place calls," precluding defendant from TCPA liability); *Gomez*, 768 F.3d at 878 (holding principals liable under the TCPA for agents' phone calls).

22 [59] *Gomez*, 768 F.3d at 877.

23 [60] *Jones*, 887 F.3d at 453.

[61] *Id.* at 451–53.

1   affirmed that "[i]n determining whether vicarious liability may be imposed, the 'extent of control

2   exercised by the [principal]' is the 'essential ingredient.'"[62]

3        Edwards does not and cannot allege facts that RedX, Cole Information, or their CEOs

4   exercised sufficient control over Tamez to be held vicariously liable under the TCPA.  Unlike the

5   defendants in *Gomez* or *Jones*, RedX and Cole Information are not principals; they are software

6   and data providers that sold technology and customer lists to Tamez and his associates.  But by

7   considering the rationale in *Jones*, it is clear that liability would not extend to these defendants

8   anyway: Edwards does not allege that Tamez placed the call on these defendants' behalf; that the

9   defendants benefited from Tamez's phone call; or that these defendants dialed Edwards's

10   number, ordered Tamez to call him, or had the right to control the "manner and means" by which

11   the call was made.[63]  Indeed, Edwards does not allege that these defendants had any control over

12   Tamez at all.  Numerous district courts have declined to find similar defendants vicariously

13   liable under the TCPA, dismissing almost identical claims with prejudice.[64]  I find their

14   reasoning persuasive and join them.  I thus decline to hold RedX, Cole Information, or their

15   CEOs vicariously liable for Tamez's use of their products to place telemarketing calls, and I

16

17   ———————————

[62] *Id.* at 450 (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)).

18   [63] *See id.* at 449; *see also Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931) ("Agency means more than mere passive permission; it involves request, instruction, or command.").

19   [64] *See Linlor v. Five9, Inc.*, No. 17CV218, 2017 WL 2972447 at *4 (S.D. Cal. Jul. 12, 2017)

20   ("Plaintiff merely alleges Defendant sold software to the entity responsible for sending the messages, and provided the entity with a toll[-]free number with which to receive responses to

21   the messages.  Thus, Plaintiff does not allege Defendant had express or actual authority over the entity that sent the alleged text messages."); *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261,

22   2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (dismissing plaintiff's complaint

23   with prejudice and reasoning that "plaintiff's allegations indicate that the app users, *i.e.*, the Buffalo Wild Wings restaurants, initiated the text messages because they, and not Yelp, decided whether, when, and to whom to send the text messages.").

1 dismiss that claim against them with prejudice.  This claim proceeds against Defendants Juan

2 Martinez, Elizabeth Martinez, and Tamez only.

3 **B.    Nevada statutory claims**

4 Edwards does not clearly state which Nevada laws defendants allegedly violated.  In his

5 complaint, he asserts a variety of causes of action, "including, but not limited to" violations of a

6 cavalcade of Nevada statutes.[65]  Characterizing these claims as ones for "Deceptive Trade

7 Practices" and "fraud,"[66] Edwards appears to cabin his suit primarily to violations of NRS

8 § 598.0923(3).[67]  In his briefing, Edwards muddies the waters—seemingly alleging that

9 defendants are also liable for negligence per se.[68]  And he also seems to abandon his fraud claims

10 against RedX and Leck, seemingly recognizing that he has not pled fraud with the requisite

11 specificity.[69]

12 *1.    NRS §§ 597.812–818, 228.500–640*

13 Edwards cannot state a claim for violations of NRS §§ 597.812 or 228.500 because those

14 statutes do not contain private rights of action.  Criminal statutes like NRS § 597.812[70] generally

15 "do not give rise to civil liability."[71]  And NRS § 228.500 empowers the Nevada Attorney

16

---

17 [65] ECF No. 1-4 at 224–25 (citing Nev. Rev. Stat. §§ 597.812–597.818, 598.0999, 598.0916,

18 598.092, 598.0923(3), 598.0977, 599B.080–599B.145, 599B.270-599B.300, 707.910(2)–707.920, 228.590(1)).

19 [66] *Id.*

[67] *Id.* at 225.

20 [68] ECF No. 30 at 20–21.

21 [69] ECF No. 19 at 20.

22 [70] Nev. Rev. Stat. §§ 597.812(1), 597.814(1) (making it a misdemeanor to "use a device for automatic dialing and announcing to disseminate a prerecorded message in a telephone call," subject to certain exceptions).

23 [71] *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)), *cert. denied*, 549 U.S. 1231 (2007).

General to prosecute those who make unsolicited telephone calls for the sale of goods or services to individuals listed in the state's Do Not Call Registry.[72]   The plain language of both statutes[73] does not permit private enforcement of these provisions.

I also decline Edwards's invitation[74] to find an implied right of action under either statute.   As the Nevada Supreme Court noted in *Baldonado v. Wynn Las Vegas, LLC*, "in the absence of plain, clear language" establishing an explicit cause of action, a court can assess whether the Nevada Legislature intended to create an "implied" cause of action by "examin[ing] the entire statutory scheme," as well as the "reason" and "public policy" behind the statute.[75]   *Baldonado* directs me to consider three factors in making this determination,: (1) "whether the plaintiffs are 'of the class for whose special benefit the statute was enacted'; (2) whether legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is 'consistent with the underlying purpose of the legislative scheme.'"[76]

While Edwards may be a member of the class designed to benefit from these statutes, the other factors do not support creating a private right of action for either one.   At the outset, "the absence of an express provision providing for a private cause of action . . . strongly suggests that

---

[72] Nev. Rev. Stat. §§ 228.530(1), 228.610.

[73] *S. Nev. Labor Mgmt. Coop. Comm. ex rel. Melendez v. Clark Cnty. Sch. Dist.*, No. 65547, 2016 WL 383147, at *1 (Nev. 2016) (unpublished) (citing *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100 (Nev. 2008)); *see also Neville v. Eighth Jud. Dist. Ct. Cnty. of Clark*, 406 P.3d 499, 502 (Nev. 2017).

[74] ECF No. 30 at 19–21.

[75] *Baldonado*, 194 P.3d at 101.

[76] *Id.* (quoting *Sports Form, Inc. v. Leroy's Horse and Sports Place*, 823 P.2d 901, 902 (Nev. 1992)) (alterations omitted) (internal quotation marks omitted).   The Nevada Supreme Court adopted this test from the U.S. Supreme Court's holding in *Cort v. Ash*, 422 U.S. 66, 78 (1975). And while the federal courts departed from *Cort*, as stated in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979), there is no indication that Nevada followed suit.

the Legislature did not intend to create a privately enforceable judicial remedy."[77]  And the statutes themselves, which the U.S. Supreme Court directs courts to consider when divining legislative intent,[78] confirm that NRS §§ 597.812 and 228.500 do not empower Edwards to enforce their terms.  The Legislature chose to delegate enforcement to the state's attorney general.  I must assume it did so for a reason.[79]  So I dismiss with prejudice Edwards's claims for violations of NRS §§ 597.812 or 228.500 against all defendants.

### 2.   NRS §§ 598.0903, et seq.

Despite broadly alleging that the defendants violated Nevada's Deceptive Trade Practices Act, Edwards appears to limit his claims to violations of NRS § 598.0923(3), which states that a person "engages in a 'deceptive trade practice' when in the course of his or her business [he or she] knowingly: violates a state or federal statute or regulation relating to the sale or lease of goods or services."[80]  Edwards tethers his deceptive-trade-practices claim exclusively to RedX's, Cole Information's, and their CEOs' alleged violations of the TCPA and its Nevada analogue, NRS § 228.500, et seq.  As I discussed above, however, Edwards does not and cannot state facts rendering these defendants liable for a TCPA violation.[81]  And like the TCPA, NRS § 228.500 does not apply to these defendants, as it prohibits "telephone solicitors" from "intentionally mak[ing] an unsolicited telephone call for the sale of goods or services to a telephone number"

---

[77] *Baldonado*, 194 P.3d at 101–02.

[78] *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (reasoning that courts should use canons of statutory construction "to help determine the Legislature's intent as embodied in particular statutory language.").

[79] *C.f. Elkins v. Moreno*, 435 U.S. 647, 666 (1978) (finding that "Congress' silence is pregnant" when it fails to specify an obligation in legislation that otherwise provides a "comprehensive and complete" treatment of the issue).

[80] Nev. Rev. Stat. §§ 598.0923, 598.0923(3).

[81] *See supra* section II.A.

listed on Nevada's Do Not Call Registry.[82]  Edwards does not and cannot allege facts that these defendants "made" these calls, as agents or otherwise.  So I also dismiss this claim with prejudice against RedX, Cole Information, Eggleston, and Leck.

### 3.     Motion for more definite statement of these claims [ECF No. 11]

Finally, Edwards's failure to identify exactly which statutes the defendants violated renders his complaint "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."[83]  So I grant both Cole Information's motion to dismiss the remaining statutory claims[84] and RedX's motion for a more definite statement,[85] and I order Edwards to identify exactly which Nevada statutes the remaining defendants purportedly violated.  Edwards should not construe this order as granting him the right to amend with additional causes of action.  He is limited to identifying those causes of action already presented in his complaint that he may wish to pursue, keeping in mind that I have already dismissed many of them with prejudice in this order.

### C.     Edwards does not state a claim for invasion of privacy.

Edwards also claims that Tamez's unwanted calls intruded upon his seclusion and invaded his privacy.  The tort of intrusion upon seclusion is "grounded in a plaintiff's objective expectation of privacy,"[86] and requires a plaintiff to prove (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a

---

[82] Nev. Rev. Stat. § 228.590(1).

[83] Fed. R. Civ. P. 12(e).

[84] ECF No. 12 at 22.

[85] ECF No. 11.

[86] *Franchise Tax Bd. of State of Cal. v. Hyatt*, 407 P.3d 717, 734 (Nev. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 1485 (2019).

reasonable person.[87]  "The question of what kinds of conduct will be regarded as a 'highly

offensive' intrusion is largely a matter of social conventions and expectations."[88]

　　　　　With respect to the first element, Edwards has failed to allege facts indicating that RedX,

Cole Information, or their CEOs committed an intentional intrusion, given that they did not place

the telephone calls at issue.  But Edwards's claim is also deficient in ways applicable to all

defendants: he has failed to allege that the four phone calls he received around 10:45 a.m. would

be highly offensive to a reasonable person.[89]  As a threshold matter, a "court considering

whether a particular action is 'highly offensive' should consider the following factors: the degree

of intrusion, the context, conduct[,] and circumstances surrounding the intrusion as well as the

intruders motives and objectives, the setting into which he intrudes, and the expectations of those

whose privacy is invaded."[90]  Edwards has offered no facts indicating why these calls would be

anything more than moderately annoying, much like any unwanted call an individual receives

during business hours.  And these calls certainly do not mirror the "nearly three hundred calls,

with multiple calls per day, from numbers [plaintiff] was not always able to recognize" that the

Ninth Circuit recently identified as plausibly giving rise to an intrusion-upon-seclusion claim.[91]

So I dismiss Edwards's intrusion-upon-seclusion claim against RedX, Cole Information, Leck,

---

[87] *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995), *overruled in part on other grounds*, 940 P.2d 134 (Nev. 1997).

[88] *Id.* at 1281.

[89] *See Shupe v. Bank of Am., N.A.*, 671 F. App'x. 435, 435 (9th Cir. 2016) (unpublished) (upholding, under Arizona law, summary-judgment dismissal of intrusion-upon-seclusion claim when the plaintiff failed to raise a dispute of genuine material fact that receipt of the defendant's call would be "highly offensive to a reasonable person").

[90] *People for Ethical Treatment of Animals*, 895 P.2d at 1282.

[91] *See, e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 725 F. App'x. 537, 540 (9th Cir. 2018) (unpublished).

and Eggleston with prejudice.  But because Edwards might be able to allege facts justifying why Tamez's call was highly offensive, I dismiss this claim against all other defendants without prejudice and with leave to amend.

### III.   Federal Rule 12(f) motion to strike [ECF No. 9]

RedX argues that I should strike immaterial footnotes in Edwards's complaint, any use of the term "illegal" with respect to RedX or Leck's behavior, and allegations describing the company's income.  Under Rule 12(f), it is within the district court's discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, and scandalous matter."[92]  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[93]  Courts may not resolve disputes and substantial factual or legal issues on a motion to strike.[94]  Nevada district courts frequently characterize Rule 12(f) motions as "heavily disfavored," "extreme and drastic" remedies.[95]

RedX and Leck have not demonstrated that Edwards's use of the term "illegal" or his allegations describing RedX's revenue are sufficiently prejudicial, immaterial, or scandalous to warrant my granting its motion to strike.  While RedX argues that these allegations may improperly influence a jury if read into evidence, such evidentiary objections are typically a non-

---

[92] *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

[93] *Id.* (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted).

[94] *Id.*

[95] *See, e.g.*, *Novva Ausrustung Grp., Inc. v. Kajioka*, No. 2:17-cv-01293, 2017 WL 2990850, at *2 (D. Nev. Jul. 3, 2017); *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) ("Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief.") (quotation omitted); *Nev. Fair Hous. Cntr., Inc. v. Clark Cnty.*, 565 F. Supp. 2d 1178, 1187 (D. Nev. 2008) ("A 12(f) motion is a drastic remedy and is generally disfavored by federal courts.").

issue at the pleading stage and more appropriately dealt with via motions in limine at trial.[96] However, Edwards's complaint is unnecessarily long and replete with legal citations, arguments, quotations, and definitions—none of which purport to allege any facts relevant to his claims.[97] In addition, many of his allegations are needlessly repetitive, often obfuscating what he intends to allege.[98] So I grant RedX's motion to strike in part and order Edwards to remove his legal citations, definitional footnotes, legal arguments, and block quotations from his complaint. Having reviewed countless TCPA complaints, I find that Edwards's factual allegations could be easily presented in an amended complaint under twenty pages. Edwards is cautioned that, in amending his complaint, he must delete all claims dismissed with prejudice in this order and he may not add new claims.

---

[96] *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 491 (C.D. Cal. 2014).

[97] *See, e.g.*, ECF No. 1-4 at 170 n.3 (providing a 28-line definition of "willful," referencing three appellate decisions and multiple statutes); 171 n.4–6, n.11 (defining "unsolicited advertisement," "telemarketing," "telephone solicitation," and "written agreement"); 187 (quoting 24 lines from 16 C.F.R.§ 310.4(b), which describes the mechanics of cold-calling); 193 n.33 (defining automatic dialing); 202 at n.35 (citing precedent discussing automatic telephone-dialing systems, while noting "any use of ATDS is not of crucial relevance"); 214 (arguing, without factual support, that various defendants "ratified" certain acts taken by Tamez or other defendants).

[98] *Compare id.* at 194 ("That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant LECK, in his capacity as Founder, President, CEO, Director, and Manager of, by, and for Defendant REDX, oversees and provides leadership, direction[,] and guidance for all the daily business activities of, by, for[,] and on behalf of Defendant REDX . . . ."), *with id.* at 195 ("That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant LECK, in his capacity as Founder, President, CEO, Director, and Manager of, by, and for Defendant REDX, oversees and provides leadership, direction[,] and guidance for all the daily business activities of, by, for[,] and on behalf of Defendant REDX."); *compare id.* at 170 n.3, *with id.* at 211 n.43 (providing nearly identical and unnecessary definitions of "willful").

**Conclusion**

IT IS THEREFORE ORDERED that Cole Information's, RedX's, Leck's, and Eggleston's motions to dismiss **[ECF Nos. 5, 12] are GRANTED.**

- This court lacks personal jurisdiction over Cole Information, Leck, and Eggleston; all claims against those defendants are hereby dismissed. **The Clerk of Court is directed to terminate Defendants Cole Information, Leck, and Eggleston from this case**.

- Edwards's TCPA, invasion-of-privacy, and NRS § 598.0923(3) claims against Cole Information, RedX, Leck, and Eggleston are dismissed with prejudice.

- Edwards's invasion-of-privacy claims against Juan Martinez, Elizabeth Martinez, and Tamez are dismissed without prejudice and with leave to amend.

- Edwards's NRS §§ 597.812–818 and 228.500–640 claims against all defendants are dismissed with prejudice.

- Edwards's remaining Nevada statutory claims against RedX, Juan Martinez, Elizabeth Martinez, and Tamez are dismissed without prejudice.

IT IS FURTHER ORDERED that RedX's motion for a more definite statement **[ECF No. 11] is GRANTED IN PART.** Edwards must amend his remaining Nevada statutory claims consistent with this order.

IT IS FURTHER ORDERED that RedX's motion to strike **[ECF No. 9] is GRANTED IN PART.** Edwards must remove all legal citations, arguments, definitions, and legal quotations from his complaint, consistent with this order.

IT IS FURTHER ORDERED that Edwards has until December 31, 2020, to amend his complaint, consistent with this order. If he fails to do so, Edwards's Nevada statutory and invasion-of-privacy claims will be deemed abandoned and dismissed with prejudice.

1       IT IS FURTHER ORDERED that Edwards's motion to compel **[ECF No. 74] is**

2  **DENIED AS MOOT**.

3

4                                                                        U.S. District Judge Jennifer A. Dorsey

                                                                         Dated: December 10, 2020